UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------

DIONNE RAUL GONZALEZ,

                Movant,

      -against-

UNITED STATES OF AMERICA,

                Respondent.

---------------------------------------------------

17cv1093

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        <u>Pro se</u> movant Dionne Raul Gonzalez moves to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, Gonzalez's motion is denied.

<u>BACKGROUND</u>

        In 2012, Gonzalez was indicted for conspiracy to commit Hobbs Act robbery and conspiracy to possess and distribute narcotics. (Criminal ECF No. 11.)[1] On February 7, 2013, the Government filed a superseding indictment, adding a third count charging him with using and carrying a firearm pursuant to 18 U.S.C. § 924(c). (Criminal ECF No. 33.) On March 1, 2013, pursuant to a plea agreement, Gonzalez pled guilty to the Hobbs Act robbery and narcotics conspiracy counts before Magistrate Judge Frank Maas. (Criminal ECF No. 55 at 6-7; Criminal ECF No. 119 at 1.)

        During his plea allocution, Gonzalez affirmed that he was clear headed and generally understood the proceedings, he had not ingested any drugs or alcohol aside from prescribed medications, and his prescribed medications did not affect his ability to understand

---

[1] Citations to "Criminal ECF No." refer to the criminal proceeding against Gonzalez, case number 12-CR-00266. Citations to "ECF No." refer to this proceeding.

the proceedings. (Criminal ECF No. 55 at 4-6.) Gonzalez also affirmed that he understood the terms of his plea agreement, including a provision waiving his right to appeal or otherwise challenge a sentence of 168 months or less. (Criminal ECF No. 55 at 13-14.)

On May 17, 2013, Gonzalez's attorney, Andres Aranda, requested a court-ordered psychiatric examination of the Defendant in connection with sentencing. (Criminal ECF No. 59.) In that letter application, Aranda stated that he believed Gonzalez was "bi-polar," "schizophrenic," and "slow minded." (Criminal ECF No. 59.) While this Court denied that application, it explained that the Defendant could retain a psychiatrist for an evaluation and that "[i]f counsel wishe[d] to proceed in that manner, he should submit a new application." (Criminal ECF No. 59.) No such application was filed.

On June 29, 2013, Aranda informed this Court that Gonzalez sought to withdraw his guilty plea and had "ordered [Aranda] not to file any papers." (Criminal ECF No. 79.) Specifically, Aranda stated that Gonzalez believed "he [pled guilty] pursuant to a Pimentel Letter and not a plea agreement." (Criminal ECF No. 79.) And in a letter submitted by Gonzalez that same day, Gonzalez also explained that he believed he "would be making an open plea to the court" rather than entering into a plea agreement. (Criminal ECF No. 80.) Thus, Gonzalez asked to "withdraw that Plea[] and enter an Open Plea to the Court." (Criminal ECF No. 80.)

Notably, Aranda's letter also described his efforts to review the plea agreement with his client, including visiting "the MDC twice to go over the [plea] agreement with [Gonzalez] and [that Aranda] spent at least [a] half hour at the Marshall's [sic] holding pens on the 4th floor going over the agreement with [Gonzalez] on the day he pled." (Criminal ECF No. 79.) Aranda also gave Gonzalez a copy of the plea agreement. (Criminal ECF No. 79.) Aranda further stated that he was concerned that Gonzalez ordered him not to file any motions because

2

Gonzalez "has been diagnosed as being both bi-polar and schizophrenic." (Criminal ECF No. 79.)

On July 3, 2013, this Court conducted a hearing to address Gonzalez's request to withdraw his guilty plea. (Criminal ECF No. 84.) At the hearing, Aranda stated that Gonzalez "has never said to me I want to withdraw my plea because I'm not guilty," but rather that he wanted to withdraw his plea, so he could plead guilty pursuant to a <u>Pimentel</u> letter. (Criminal ECF No. 84 at 4:1-4.) And Gonzalez explained that he did not want to go to trial but thought it would be "better for [him] to agree to a <u>Pimentel</u> letter" rather than be bound to a plea agreement. (Criminal ECF No. 84 at 5:7-25.) Moreover, the Government pointed out that if Gonzalez withdrew his plea, it would be free to prosecute the firearms charge, which carried a mandatory consecutive sentence of five years. (Criminal ECF No. 84 at 6-8.) The Government further explained that the mandatory minimum Gonzalez faced would increase from 10 years to 15 years if the § 924(c) count were included. (Criminal ECF No. 84 at 8:8-11.) Further, Aranda explained that "it's not in [Gonzalez's] best interest to go forth with a <u>Pimentel</u> letter." (Criminal ECF No. 84 at 7:7-13.)

During the hearing, Gonzalez explained that he "underst[oo]d a little bit" about the consequences of withdrawing his plea. (Criminal ECF No. 84 at 7:16-17.) Once again, Aranda requested a psychiatric evaluation, claiming that Gonzalez "tunes in and out." (Criminal ECF No. 84 at 9:4-13.) Ultimately, this Court afforded Gonzalez an opportunity to confer further with counsel about whether he wanted to withdraw his plea. (Criminal ECF No. 84 at 11.) On July 8, 2013, Aranda notified this Court that Gonzalez wished to maintain his guilty plea pursuant to the plea agreement. (Criminal ECF No. 82.)

3

On May 22, 2014, this Court accepted Gonzalez's guilty plea as "knowing and voluntary" and sentenced him to 126 months' imprisonment, plus supervised release. (Criminal ECF No. 137 at 19-20; Criminal ECF No. 119 at 2-3.) During his sentencing hearing, Aranda suggested a downward departure from the sentencing guidelines because of Gonzalez's "mental problems." (Criminal ECF No. 137 at 6-8.) At that time, this Court noted that a "diminished mental capacity" was "certainly not evident to the Court from his conduct in organizing a group and persuading them to travel with him in two vehicles to rob a warehouse, nor is it obvious to this Court in [Gonzalez's] very organized remarks to the Court here today." (Criminal ECF No. 137 at 20:19-23.)

Gonzalez appealed the judgment of conviction. The Second Circuit dismissed his appeal for failure to demonstrate that the waiver of Gonzalez's appellate rights was unenforceable. (Criminal ECF No. 165.)

Now, Gonzalez seeks to set aside or vacate his sentence due to the ineffective assistance of counsel on the following grounds: (1) counsel failed to advise Gonzalez that his plea was pursuant to a plea agreement rather than a <u>Pimentel</u> letter, (2) counsel advised him to say "yes" to all questions at the guilty plea, (3) counsel has been suspended from the practice of law multiple times, and (4) counsel "gave [him] up . . . [to] help somebody else with the same prosecutor." (Mot. under 28 U.S.C. § 2255, ECF No. 1 ("Mot."), at 8.) In addition, Gonzalez claims that he was taking numerous psychiatric medications around the time of his guilty plea. (Mot. at 8.) Moreover, in his reply brief, Gonzalez argues that his counsel was ineffective because he (1) failed to file motions requested by Gonzalez, (2) never raised a "sentencing

4

entrapment" or "manipulation" defense, (3) failed to preserve his right to appeal, and (4) failed to accept the guilty plea before a deadline, which led to the addition of the § 924(c) charge.[2]

DISCUSSION

I. Standard

Under 28 U.S.C. § 2255, a movant may collaterally attack his sentence by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255). Indeed, "the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez, 722 F.3d at 130 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). Ultimately, it is within this Court's discretion to determine whether a hearing is necessary. See Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003). And where, like here, the judge who presided over the underlying criminal proceeding also presides over the § 2255 motion, "a full-blown evidentiary hearing may not be necessary." Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011). Accordingly, the Second Circuit permits a "middle road" of deciding any disputed facts on the basis of written submissions. Raysor, 647 F.3d at 494.

Collateral challenges conflict with "society's strong interest in the finality of criminal convictions," so movants are subject to a higher bar "to upset a conviction on a

---

[2] Arguments raised for the first time in reply briefs are waived. See Farmer v. United States, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived, and courts have routinely applied this rule to pro se litigants."); accord Melo v. United States, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011).

5

collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). Thus, to prevail on a § 2255 motion, a movant must show "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Nnebe v. United States, 534 F.3d 87, 90 (2d Cir. 2008) (quotation marks omitted). In making such a showing, a movant "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." Gonzalez, 722 F.3d at 131. And "a district court need not assume the credibility of [the movant's] factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009).

Because Gonzalez is proceeding pro se, his motion is held to "less stringent standards than [those] drafted by lawyers." Santiago v. United States, 187 F. Supp. 3d 387, 388 (S.D.N.Y. 2016) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)); accord Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001). And this Court must liberally construe his papers "to raise the strongest arguments they suggest." Green, 260 F.3d at 83 (quotation marks omitted). However, pro se litigants are "not exempt from compliance with relevant rules of procedural and substantive law." Carrasco v. United States, 190 F. Supp. 3d 351, 352 (S.D.N.Y. 2016) (quotation marks omitted).

II. Ineffective Assistance of Counsel

The majority of Gonzalez's claims relate to ineffective assistance of counsel. To prevail on such claims, he must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Notably, "there is no reason for a court deciding an ineffective

6

assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

With respect to the first prong, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (citation omitted). And "the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687).

Accordingly, "a defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate." Cromitie v. United States, 2017 WL 1383982, at *7 (S.D.N.Y. Apr. 7, 2017) (quoting Albanese v. United States, 415 F. Supp. 2d 244, 249 (S.D.N.Y. 2005)). It is well settled that a "strategic decision does not constitute ineffective assistance of counsel." Jiang v. Mukasey, 522 F.3d 266, 270 (2d Cir. 2008). Indeed, "courts are instructed not to second-guess reasonable professional judgments and impose on counsel a duty to raise every colorable claim." Parks v. Sheahan, 104 F. Supp. 3d 271, 288 (E.D.N.Y. 2015) (quotation marks omitted); see United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) ("[A]ctions or omissions that might be considered sound trial strategy do not constitute ineffective assistance . . . ." (quotation marks omitted)). Accordingly, this Court "will not second-guess trial counsel's defense strategy simply because the chosen strategy . . . failed." United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987). Moreover, "blanket assertions against [a] trial counsel's performance in a self-serving affidavit," Davison v. United States, 2001 WL 883122, at *8 (S.D.N.Y. Aug. 3, 2001) (citation omitted), and "[a]iry

7

generalities, conclusory assertions and hearsay statements" are plainly insufficient to form a basis for relief, Guerrero v. United States, 2017 WL 1435743, at *5 (S.D.N.Y. Apr. 20, 2017).

With respect to the prejudice prong, a movant "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Raysor, 647 F.3d at 495 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Thus, "[t]he prejudice prong can be satisfied even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Wilson, 570 F.3d at 502 (quotation marks omitted).

This Court addresses each ground for ineffective assistance of counsel in turn.

A. *Pimentel* Letter

Gonzalez claims that he was misled into pleading guilty pursuant to a plea agreement, rather than pursuant to a Pimentel letter. As discussed above, this Court afforded Gonzalez the opportunity to withdraw his guilty plea pursuant to the plea agreement, but he declined. Ordinarily, such a decision would counsel against finding prejudice. However, the issue is more nuanced because the Government filed a superseding indictment adding a charge that would have increased Gonzalez's sentencing exposure. Specifically, if Gonzalez withdrew from his plea deal, he would have exposed himself to an additional five-year mandatory minimum sentence. Notably, however, the superseding indictment was filed before Gonzalez pled guilty.

Still, Gonzalez's claim fails because he cannot satisfy either Strickland prong. First, he offers nothing to show that his counsel's representation fell below an objective standard of reasonableness or that his counsel misled him. This Court accepted Gonzalez's plea as

8

knowing and voluntary based on the testimony from his plea allocution in front of a magistrate judge. (Criminal ECF No. 137 at 19-20.) During that plea allocution, Gonzalez stated that he was familiar with and understood the terms of his plea agreement, including that he waived certain rights to appeal. (Criminal ECF No. 55 at 14:1-23.) He also affirmed that he discussed the charges with Aranda and that he was satisfied with the representation and advice of counsel. (Criminal ECF No. 55 at 6:5-11.) And Aranda represented to this Court that he "went to the MDC twice to go over the [plea] agreement with [Gonzalez] and spent at least [a] half hour at the Marshall's [sic] holding pens on the 4th floor going over the agreement with him on the day he pled." (Criminal ECF No. 79.)

Gonzalez's after-the-fact denials of his understanding are insufficient to show that his attorney's conduct fell below an objective standard of reasonableness. Indeed, courts are generally reluctant to question the sworn statements made by defendants in court based on subsequent denials. See United States v. Rivas, 99 F.3d 401, 1995 WL 736547, at *1 (2d Cir. 1995) (summary order); Brandon v. United States, 2011 WL 4801362, at *4 (S.D.N.Y. Oct. 11, 2011) ("Solemn declarations in open court carry a strong presumption of verity."). Specifically, at a plea allocution, testimony regarding a defendant's knowledge and understanding of his plea "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). In addition, Aranda's advice not to withdraw the plea was good advice, given the added exposure Gonzalez would have faced. The advice to enter into the plea agreement rather than a Pimentel

9

letter was also sound, because doing so allowed Gonzalez to plead guilty to the original, rather than the superseding, indictment.

Nor can Gonzalez demonstrate prejudice. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012). As a threshold issue, Gonzalez was given the opportunity to withdraw the plea he claims he did not want, but he chose not to because of the added sentencing exposure. In other words, even if Aranda had "tricked" Gonzalez, he was given the opportunity to rectify the problem but voluntarily chose to maintain the plea agreement. And as a result, he entered into a plea agreement with less exposure than he would have faced if he withdrew the plea. There is no way this could have prejudiced Gonzalez.

B. Responses to Questions at the Plea Allocution

Gonzalez claims that his counsel improperly advised him to say "yes" to all questions at his plea allocution. As a threshold matter, Gonzalez answered "no" to numerous questions during his allocution, demonstrating that he did not heed the purported advice. (See Criminal ECF No. 55 at 4:12, 5:1, 5:10, 6:4.) In addition, Gonzalez requested and received a hearing to discuss withdrawing his guilty plea but decided not to do so. Therefore, even if counsel had advised him to say "yes" to every question at his plea allocution, he did not suffer prejudice. Moreover, his counsel submitted a declaration swearing that he made no such recommendation. (Decl. of Andres M. Aranda, ECF No. 179-1 ("Aranda Decl."), ¶ 3.)

C. Counsel's Disciplinary Record

Gonzalez argues that Aranda provided ineffective assistance of counsel because of Aranda's disciplinary record, which includes a suspension by the Second Circuit in 2015. This claim is unavailing. Gonzalez fails to explain how any of Aranda's disciplinary issues

affected his performance or prejudiced Gonzalez. Indeed, Aranda's suspension occurred almost two years after Gonzalez chose not to withdraw his plea and related to Aranda's default on several appeals—none of which were related to Gonzalez. See generally In re Aranda, 789 F.3d 48 (2d Cir. 2015). And, to this Court's knowledge, none of Aranda's other disciplinary issues arose from his representation of Gonzalez. See generally In re Aranda, 789 F.3d 48. This Court is unaware of any case law holding that unrelated disciplinary issues brand counsel as per se ineffective.[3]

Gonzalez's only specific allegation is that Aranda's suspension left him without an appellate attorney, causing him to have to file pro se applications. While Gonzalez informed the Second Circuit that he retained new counsel less than a month after Aranda's termination as counsel, his new appellate counsel failed to provide any representation. See United States v. Gonzalez, No. 14-1878, ECF Nos. 202, 218 (2d Cir.). Thereafter, the Second Circuit granted Gonzalez's motion for leave to proceed pro se, and Gonzalez vigorously opposed the Government's motion to dismiss the appeal. See Gonzalez, No. 14-1878, ECF Nos. 290 and 295. The Second Circuit granted the Government's motion and dismissed the appeal, finding that Gonzalez had waived his right to appeal. See Gonzalez, No. 14-1878, ECF No. 314.

Gonzalez's claim of ineffective assistance of counsel is meritless because he made an "unequ[i]vocal" request to proceed pro se pursuant to Faretta v. California, 422 U.S. 806 (1975), which the Second Circuit duly considered and granted. See United States v. Gonzalez, No. 14-1938, ECF No. 203 (motion); Gonzalez, No. 14-1878, ECF No. 290 (order

---

[3] Although the Second Circuit has recognized a per se ineffectiveness rule, it has applied it only in two situations, neither of which apply here: where counsel is "(1) not duly licensed to practice law because of a failure ever to meet the substantive requirements for the practice of law, or (2) implicated in the defendant's crimes." United States v. Rondon, 204 F.3d 376, 379-80 (2d Cir. 2000) (quotation marks and citations omitted); accord Lobacz v. United States, 764 F. App'x 1, 2 (2d Cir. 2019).

11

granting motion). And there is no basis for a claim of ineffective assistance of counsel where the movant proceeds pro se. See United States v. Chichakli, 2014 WL 5369424, at *11-12 (S.D.N.Y. Oct. 16, 2014) (explaining that defendant had a constitutional right to effective assistance of counsel "but chose to waive this right and represent himself").

And even if the first prong of Strickland were satisfied, Gonzalez has offered nothing to demonstrate that had not proceeded pro se, the result of the Government's motion to dismiss would have been different. Gonzalez submitted a thorough, 37-page brief arguing that his waiver was unenforceable because it was not knowingly, voluntarily, and competently provided. The Second Circuit disagreed. Indeed, this Court found that Gonzalez voluntarily and knowingly pled guilty, and at his guilty plea Gonzalez acknowledged that he waived his right to appeal.

D. Alleged Betrayal by Counsel

Gonzalez claims that he "felt [his] lawyer gave [him] up" to "help somebody else with the same prosecutor." (Mot. at 8.) Not only does Gonzalez fail to provide any detail supporting such a claim, he concedes he lacks "actual pro[of] for this claim" and that "maybe [counsel] did not help another defendant." (Reply Brief, ECF No. 27 ("Reply") at 6.)

E. Failure to File Requested Motions

Gonzalez claims that his counsel failed to raise a sentencing entrapment or sentencing manipulation defense. Gonzalez appears to be wrong on the facts. At sentencing, counsel raised these defenses, arguing that the Government trapped Gonzalez into a higher sentence by designing the sting operation to include a larger quantity of drugs. (See Criminal ECF No. 137 at 6:12-7:4; 11:7-15.) Nevertheless, the status of both defenses within the Second Circuit is unclear. See United States v. Troncoso, 691 F. App'x 47, 49 (2d Cir. 2017) (summary

12

order); United States v. Gomez, 103 F.3d 249, 256 (2d Cir. 1997); United States v. Cromitie, 2011 WL 2693297, at *1 (S.D.N.Y. June 29, 2011).

As for counsel's failure to apply for a psychiatric evaluation, Gonzalez's claim is foreclosed by his judicial admissions. As discussed above, after the plea hearing Aranda filed a request for a psychiatric examination of Gonzalez to assist the Court in sentencing. (Criminal ECF No. 59.) This Court denied the request but afforded Gonzalez the opportunity to retain a private psychiatrist. (See Criminal ECF No. 59.) On appeal, Gonzalez asserted that he made the decision not to retain a psychiatrist. See Gonzalez, No. 14-1878, ECF No. 94 at 7.

F. Failure to Preserve Right to Appeal

Next, Gonzalez claims in his reply brief that his counsel was ineffective because Gonzalez waived his right to appeal in the plea agreement. This Court construes Gonzalez's claim to argue that his counsel's performance was deficient because he failed to negotiate a plea agreement that did not include an appeal waiver.

Gonzalez cannot satisfy either Strickland prong. First, Gonzalez fails to allege how his counsel's performance was deficient. Rather, he takes issue with the general fact that an appeal waiver was part of the plea deal—a plea deal he knowingly and voluntarily accepted. And contrary to Gonzalez's argument, the appeal waiver was the product of sound advice because it likely served as part of the quid pro quo allowing Gonzalez to avoid pleading guilty to the firearms charge.

Second, Gonzalez cannot demonstrate prejudice. "Strickland prejudice focuses on the outcome of the proceeding rather than a defendant's priorities or desires. [B]ecause a defendant has no right to be offered a plea, the ultimate outcome of a plea negotiation depends on whether the government is willing to agree to the plea the defendant is willing to enter. To

13

prevail on that ground, a petitioner must therefore demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal" in which Gonzalez did not waive his right to appeal. Kovacs v. United States, 744 F.3d 44, 52 (2d Cir. 2014) (quotation marks and citations omitted). There is no indication that a plea deal without an appeal waiver could or would have been offered. And in this Court's experience, appeal waivers are vital parts of plea agreements, so it is not reasonably probable that the Government would have accepted a deal without such a waiver. See United States v. Woltmann, 610 F.3d 37, 40 (2d Cir. 2010) ("Ordinarily, appeal waivers are enforced—and for good reason."); United States v. Morgan, 386 F.3d 376, 380 (2d Cir. 2004) ("[P]lea agreements can have extremely valuable benefits to both sides—most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt.").

  G. Failure to Accept Plea Deal Before Deadline

    In his reply brief, Gonzalez argues that his attorney failed to accept a plea deal before a deadline. Specifically, he claims Aranda went to the Dominican Republic for a family emergency and missed a deadline to accept "the first plea deal." (Reply at 4.) Gonzalez fails to explain what "the first plea deal" was or if it differed from the plea agreement that he signed. Further, Gonzalez repeatedly argues on this motion that he did not want a plea agreement. Because "[a]iry generalities, conclusory assertions and hearsay statements" are plainly insufficient, his claim based on this ground is denied. Guerrero, 2017 WL 1435743, at *5.

III. Mental Fitness

    Finally, Gonzalez generally claims that he was taking multiple psychiatric medications at the time of his guilty plea. (Mot. at 8.) But he does not explain how this forms a

14

basis for relief. However, given Gonzalez's alleged dissatisfaction with his guilty plea, this Court construes his claim to argue that he was not mentally competent to enter a guilty plea.

As a threshold matter, Gonzalez does not allege that the medications altered his ability to understand the underlying proceedings. And the fact that a person took a psychiatric medication does not mean that he is per se incompetent. See United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986) ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial."); United States v. Newfield, 565 F.2d 203, 206 (2d Cir. 1977) ("The court may consider a defendant's history of psychiatric treatment in making [a competency] decision, but awareness of such a history does not automatically require a finding of incompetency. It does not follow that because a person is mentally ill he is not competent to stand trial." (quotation marks omitted)). Accordingly, Gonzalez's claim is dismissed because he fails to "set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." Gonzalez, 722 F.3d at 131.

But even if Gonzalez had alleged that the medications altered his ability to understand the proceedings, his claim would still fail. A defendant is deemed mentally competent to plead guilty when he has "(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him." United States v. Nichols, 56 F.3d 403, 410 (2d Cir. 1995) (quotation marks omitted); see Godinez v. Moran, 509 U.S. 389, 399 (1993) (applying the same standard to guilty pleas). "The question of competency . . . is limited to the defendant's abilities at the time of [the guilty plea] and failure to conduct a full competency hearing is not a ground for reversal when the defendant appears competent during [the proceeding]." Vamos,

15

797 F.2d at 1150 (quotation marks and citations omitted). "Accordingly, deference is owed to the district court's determinations based on observation of the defendant during the proceedings." Vamos, 797 F.2d at 1150. "[A] court may rely not only on psychiatrists' reports indicating competency but also on its own observations of the defendant." Nichols, 56 F.3d at 414.

Here, the magistrate judge found Gonzalez to be competent at the time of his allocution. And when this Court dealt directly with Gonzalez at subsequent hearings—including when it allowed him the opportunity to consider withdrawing his plea—he appeared to understand and presented as articulate and fully conscious of the proceedings. Moreover, at sentencing, Gonzalez spoke movingly to the Court and recounted his life history in a coherent narrative. In sum, this Court had ample opportunity to observe Gonzalez during various proceedings and found him to be alert and engaged. Accordingly, Gonzalez's claim is dismissed.

CONCLUSION

For the foregoing reasons, Gonzalez's motion is denied, and this case is dismissed. Because Gonzalez has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). This Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962). The Clerk of Court is directed to terminate all pending motions, mark this case as closed, and mail a copy of this Memorandum & Order to Gonzalez.

Dated: July 29, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

16